UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X    **ATTORNEY**
UNITED STATES OF AMERICA,                                       **DECLARATION**


    - against -                                                     Case No.: 17-CR-00522 (SJF)

JOHN AMBROSIO,

              Defendant.
-----------------------------------------------------------X

       The Defendant, JOHN AMBROSIO, through his attorney, Michael J. Alber, submits this

Declaration in support of the Defendant's application for a modification of his sentence pursuant

to 18 U.S.C.A. § 3582 (c)(1)(A).

       1.      This application seeks the immediate release of JOHN AMBROSIO

[hereinafter AMBROSIO] from the federal prison and to serve the remainder of his custodial

term in home detention pursuant to 18 U.S.C.A. § 3582 (c)(1)(A). Here, there are "extraordinary

and compelling reasons warranting such a reduction" as a result of the coronavirus (COVID-19)

pandemic, the health conditions and the age of AMBROSIO [18 U.S.C.A. § 3582 (c)(1)(A)].

       2.      This is Mr. Ambrosio's third application for compassionate release.  The first

motion for compassionate release was filed on April 16, 2020, and then withdrawn, to allow the

BOP time to issue a decision.  Ultimately, on September 2, 2020 the Court denied Mr.

Ambrosio's compassionate release application.

       3.      There is now new information and a new basis for compassionate release.  Mr.

Ambrosio has contracted COVID-19, and is now suffering complications from the virus.  See

[**EXHIBIT "A"**].  This application is made in light of his existing medical conditions, and now

contracted virus COVID-19.  On March 1, 2021 AMBROSIO applied to the BOP for release

based upon his health and his contracting of COVID-19.  Thirty (30) days have elapsed since

AMBROSIO'S application to the BOP, and he has yet to receive a determination.

**AMBROSIO MEDICAL ISSUES**

2.       AMBROSIO is an inmate at FCI Fort Dix located at 5756 Hartford & Pointville

Road, Joint Base MDL, NJ 08640 which is a low security federal correctional institution.  On

December 6, 2018, AMBROSIO was sentenced to fifty-one (51) months of imprisonment and

three (3) years of post-release supervision for his plea of guilty to a charge involving

racketeering conspiracy which did not involve any violence or weapons.  AMBROSIO has

completed over fifty (50%) percent of his jail sentence.

3.       AMBROSIO is scheduled to be released to a residential reentry center (RRC)

December 2021.

4.       During this time of the coronavirus pandemic, the immediate release of

AMBROSIO is just and reasonable pursuant to 18 U.S.C. § 3582, a low-risk prisoner, but high-

risk individual.

5.       AMBROSIO suffers from chronic and serious health conditions. AMBROSIO

suffers from and has been treated for Gerd, Hernia, Hypertension, Hyperlipemia, Five (5)

Cardiac Stents, Blockage in his left leg, Vertigo, Sugar Diabetes, Asthma, Prostate (Elevated

PSA), Knee Osteoarthritis, Water Retention in Leg, Cellulitis of the Leg, Grit Disturbance,

Refractory Disequilibrium. AMBROSIO's long-term outlook for his heart disease is bleak.  See

**[EXHIBIT "A"].**

6.      As reflected in the medical records from the Bureau of Prisons, by way of highlighting AMBROSIO'S serious medical condition, dated January 12, 2018, AMBROSIO has the following health problems: (1) **Type 2 Diabetes** (2) Obesity (3) Presbyopia (4) Essential (primary) hypertension (5) Allergic rhinitis (6) **Asthma** (7) Gastro-esophageal reflux disease without esophagitis (8) dermatitis (9) **Disorder of Kidney and Ureter,** unspecified elevated creatinine (10) Edema (11) Coronary angioplasty status (Stents x4((last one being 3 years ago). **[Exhibit "A"].** As of January 2018, AMBROSIO was on a series of medications for Asthma and various other medical conditions in total ten (10) medications. **[Exhibit "A]**. Since AMBROSIO'S incarceration at Fort Dix (FCI) the list of his medications has almost doubled. [**Exhibit "B"**]. This clearly is an indication of the increased medical care required of AMBROSIO.

7.      AMBROSIO continues to have increased health problems. **[EXHIBIT "C"**]. As reflected in the Health Problems record of the BOP as of June 28, 2019, Dr. Ravi Sood, described AMBROSIO as having peripheral vascular disease. Further on April 15, 2019 AMBROSIO was described as having Hyperlipidemia, a condition which puts someone at risk of heart attack or stroke. On June 28, 2019, Dr. Ravi Sood, also described AMBROSIO as having Osteoarthritis, a medical condition which has led to significantly decreased mobility of AMBROSIO and pain. AMBROSIO'S medical records reflect that he is using a walker. Also, on June 28, 2019, Dr. Sood described that AMBROSIO has joint pain in both knees. Dr. Sood has further diagnosed AMBROSIO with a Cardiac murmur. On April 15, 2019, AMBROSIO was found to have abnormal findings in his blood chemistry. On July 19, 2019, AMBROSIO was diagnosed with unspecified disorder of vitreous body, a condition affecting his eyes. Most noteworthy is that none of the records from the BOP indicate that AMBROSIO'S physical

condition has improved, in fact he still has approximately twenty-six (26) identifiable medical conditions, with asthma and diabetes being the most vulnerable conditions when considering the impact of COVID-19.

8.      Dr. Alex Czira describes AMBROSIO'S fragile medical condition.  **[Exhibit "D"]** Dr. Czira indicates that AMBROSIO suffers from chronic and serious health conditions. AMBROSIO has been treated for Gerd, Hernia, Hypertension, Hyperlipemia, Five (5) Cardiac Stents, Blockage in his left leg, Vertigo, Sugar Diabetes, Asthma, Prostate (Elevated PSA), Knee Osteoarthritis, Water Retention in Leg, Grit Disturbance, Refractory Disequilibrium. Dr. Czira concludes that AMBROSIO'S long-term outlook for his heart disease is bleak.

9.      Dr. Czira [**Exhibit "D"**] previously determined that as a result of the serious health conditions and his age, AMBROSIO is at the highest risk of contracting the coronavirus and suffering the most severe health consequences from the coronavirus such as hospitalization or even death.

10.     I have also attached a copy of the list of medications from the BOP [**Exhibit "B"**] reflecting the volume of medications AMBROSIO is required to ingest, which further documents his fragile medical condition.  The medication history spans several pages.

11.     AMBROSIO'S feeble medical condition has been well documented during the pendency of this case. On May 31, 2018, AMBROSIO was released from custody with the condition of home detention and a review of the court's ECF filing docket reveals that there were approximately thirty (30) orders by this court to modify the conditions of the release to permit AMBROSIO to attend medical appointments.  On December 12, 2017 at the arraignment, MJ Gary Brown issued a medical ordered directing the MDC Brooklyn to address the medical

conditions of AMBROSIO [Document No 60]. As far back as May 30, 2018, I wrote [Document No 149] to the court that:

> Mr. Ambrosio is seventy-five (75) years old, with terrible health. Most recently Mr. Ambrosio was rushed to the hospital, whereupon he was diagnosed with Near Syncope, also called "presyncope." This condition causes a person to feel as though they will lose conscious. Mr. Ambrosio has repeatedly complained of dizziness, feeling lightheaded, confusion, difficulty breathing, and nausea. Mr. Ambrosio has a history of kidney failure, and within the past year he was hospitalized for an infection in his leg. He has four stints in his heart. In March of 2018 during his incarceration he continuously complained of dizziness, and as well as significant discomfort due to high blood pressure. Given Mr. Ambrosio's medical history and his most recent rush to the hospital on May 15, 2018, there is concern that his medical needs are not being tended to, and that something may happen to him during his upcoming anticipated incarceration. Given the deteriorating health of Mr. Ambrosio, he has every incentive to abide by Court order if he is released with conditions of the Court. Allowing Mr. Ambrosio to visit his usual doctors and specialists outside the confines of incarceration will allow him to address his specialized health needs.

### THE COVID-19 OUTBREAK PRESENTS COMPELLING AND EXTRAORDINARY CIRCUMSTANCES THAT WARRANT COMPASSIONATE RELEASE FOR AMBROSIO WHO IS A HIGH-RISK FATALITY PATIENT AND WHO NOW HAS COVID-19

12.     On March 13, 2020, the White House declared a national emergency, under Section 319 of the Public Health Services Act, 42 USC § 247 (d)).[1] On March 16, 2020, the White House issued guidance on recommending that, for the next eight weeks, gatherings of ten persons or more be canceled or postponed.[2]

---

[1] The White House, Proclamation on Declaration a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020) available at https://www.whitehouse.gov/presidential-actions/proclemation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

[2] Sheri Fink, "White House Takes New Line After Dire Report on Death Toll," *New York Times* (March 17, 2020), available at https://www.nytimes.com/2020/03/17/us/coronavirus-fatality-rate-white-house.html?action=click&module=Spotlight&pgtype=Homepage.

13.     According to the CDC, "COVID-19 can affect your respiratory tract (nose, throat, lungs), cause an asthma attack, and possibly lead to pneumonia and acute respiratory disease."

14.     According to the CDC "older adults and people of any age who have serious underlying medical conditions might be at higher risk for severe illness from COVID-19. According to the CDC, "those at high-risk for severe illness from COVID-19 include:"

i.      People aged 65 years and older
ii.     People who live in a nursing home or long-term care facility
        Other high-risk conditions could include:
iii.    People with chronic lung disease or moderate to severe asthma
iv.     People who have serious heart conditions
v.      People who are immunocompromised including cancer treatment
vi.     People of any age with severe obesity (body mass index [BMI] >40)
        or certain underlying medical conditions, particularly if not well
        controlled, such as those with diabetes, renal failure, or liver disease
        might also be at risk

15.     As a result of his serious health conditions and his age, AMBROSIO is at the highest risk of contracting the coronavirus and suffering the most severe health consequences from the coronavirus.  Now this risk has become a reality due to AMBROSIO contracting COVID-19, and now having pneumonia.  The long-term effects are yet to be completely seen, however, given his age and other medical conditions, he has a significant risk for further complications, especially with pneumonia.  Given his asthmatic condition and age further detention or exposure to COVID-19 could be fatal.  Under the CDC, AMBROSIO fits into almost every category of high risk.  This pandemic was not envisioned by this Court at the time of sentencing in this matter, nor could the Court predict that a life-threatening pandemic would be pervading our country, or that AMBROSIO would in fact contract COVID-19.

16.     This unparalleled health crisis in our country and its deadly expected arrival in our prisons present "extraordinary and compelling reasons' to grant AMBROSIO'S motion.  Fort

Dix (FCI) has confirmed COVID-19 cases and is already an overly crowded facility.[3]

AMBROSIO relates to counsel that social distancing is not being practiced at all, and that mask

protocols are not being followed. The protocols of temperature taking of persons coming in and

out of the prison ignore persons that are asymptomatic and still carriers of the virus.[4] "Social

distancing" is not an option for inmates. The New York Times recently explained why jails are a

much more dangerous place to be than even a cruise ship. *See* "An Epicenter of the Pandemic

Will be Jails and Prisons, If Inaction Continues," *The New York Times* (March 16, 2020),

available at https://www.nytimes.com/2020/03/16/opinion/coronavirus-in-jails.html.

AMBROSIO relates to counsel that hand sanitizers are sporadically available to inmates and air

circulation is very poor, and covid protocols along with social distancing are not being followed.

## THE RELEVANT § 3553 (A) FACTORS INCLUDING AMBROSIO'S RELEASE PLAN, FAVOR SENTENCING

17.     When extraordinary and compelling reasons are established, the Court must

consider the relevant sentencing factors in § 3553 (A) to determine whether a sentencing

reduction is warranted. 18 USC § 3582 (c)(1)(A)(ii).

18.     In this case, a review of Section 3553 (a) factors, and his release plan of home

confinement under electronic G.P.S. monitoring for the remainder of his unserved original term

of imprisonment, favors granting AMBROSIO'S compassionate release.

---

[3] https://www.bop.gov/coronavirus/
[4] Marco Cascella et al., *Features, Evaluation and Treatment Coronavirus (COVID-19)*, National Center for Biotechnology Information ("NCBI"), March 20, 2020, https://www.ncbi.nlm.nih.gov/books/NBK554776#_ncbi_dlg_citbx_NBK554776.

19.     Under 34 U.S.C. Section 60541(g), the Early Release Pilot Program, allows the BOP to place eligible elderly and terminally ill prisoners on home confinement before the expiration of their prison sentence.

20.     Under 18 U.S.C. Section 3624(c), Community Confinement, permits the BOP to place a prisoner in a Residential Reentry Center for up to 12 months at the end of his or her sentence. Previously, the BOP was ordinarily authorized to place a prisoner on home confinement for a period of time equal to 10% of his or her sentence, or six months, whichever is shorter. AMBROSIO is scheduled to be released from custody to a residential reentry center (RRC) six (6) months prior to June 20, 2022, which is December 2021.

21.     Under 18 U.S.C. Section 3624(c), Community Confinement, AMBROSIO is eligible to be released from custody to a residential reentry center (RRC) twelve (12) months prior to June 20, 2022, or June 2021.

22.     On April 3, 2020, the Attorney General of the United States issued a Memorandum to the Bureau of Prisons to increase use of home confinement at institutions most affected by COVID-19.  [**EXHIBIT "E"].**  While Fort Dix FCI is not one of the expressly listed facilities, the memorandum references "…and at other similarly situated BOP facilities where COVID-19 is materially affecting operations."  Exercising authority under the CARES act, Attorney General Barr directed the BOP to review all inmates who have COVID-19 risk factors, as established by CDC.

23.     Unfortunately, AMBROSIO falls within that high-risk "vulnerable" category with his current fragile medical conditions. AMBROSIO has been married for forty-five (45) years to Rose Ambrosio who is seventy-six (76) years old. The couple has resided at the same residence in Huntington, New York for forty-five (45) years.

24.     If this compassionate request should be granted, AMBROSIO will reside at the Huntington marital residence with his wife and agree to any conditions of release including home detention and abide by all state mandates regarding self-isolation and social distancing.  It is important to point out that during his pre-trial release, AMBROSIO respected and complied with all conditions including home detention.

25.     As a result of our Country's coronavirus pandemic, the immediate release of AMBROSIO from Fort Dix FCI with the condition that he complete the sentence under home detention would be fair and just considering the factors set forth in section 3553(a) to the extent that they are applicable.  This would allow him to get the personal treatment from his medical providers, who know his medical history best.  Further, they can monitor his progress through the aftermath of COVID-19, which continues to give AMBROSIO complications.  AMBROSIO reports the pneumonia has not gone away, he has difficulty breathing and pain in his chest.  Given his age at seventy-eight (78) with his continued confinement his medical conditions will continue to get worse.

26.     AMBROSIO'S offense conduct, while concededly serious, did not involve personal violence, and we acknowledge AMBROSIO's prior history with the justice system.  However, the instant case at its core involved gambling.  While the Government will make claims that debtors felt intimidated and/or in fear, AMBROSIO did not physically harm anyone involved, nor, did he take active steps to do so.  He was not charged with having any weapons or threatening the use of weapons.  He timely accepted responsibility for his conduct, and pending sentence he was released to home confinement, and complied with every aspect of this Court's directives.  In fact, this Court received a letter request every time AMROSIO had any type of

medical appointment, said appointments being frequent with different doctors. During his incarceration he has had no infractions.

27. AMBROSIO, at 78, is not a danger to the community. He is aged, infirm, and with significantly debilitating conditions. See [**Exhibit "A"** through "**D**"]. Now, add the global pandemic and the health complications he now has from COVID-19, the continued incarceration of AMBROSIO is inhumane. He is not a youngster, or a physically fit person, or even a person with ordinary health, even for his age. AMBROSIO wishes to live out his final years with his wife, who is struggling with age related issues herself. He is amenable to home confinement with further restrictions the Court seeks to impose. He poses no harm to others, and in fact, his medical records reflect that he is using a walker because of decreased mobility.

28. Indeed, Section 3553 (a) factors that might give pause to this Court as disfavoring resentencing (i.e., deference to the seriousness of the offense conduct and due respect for the law, as well as prior contacts with justice system) are largely overcome by the unreasonable threat of death in AMBROSIO'S current conditions of confinement, and that there are conditions of home detention which can still provide a "sufficient but not greater than necessary" sanction of punishment. 18 USC § 3553 (a). At present, AMBROSIO has credit for 32 months and is eligible for release by the BOP for home confinement June 2021. Given the circumstances, the few extra months before home confinement pose a risk that far outweigh any benefit that could be seen by incarceration.

29. A review of the medical history of AMBROSIO shows that his conditions have not improved, and in fact he now takes additional medications. The Government cannot dispute the serious physical danger created by the current pandemic to someone with AMBROSIO'S medical profile. According to the BOP website, inmates and staff have tested positive for

COVID-19 at Fort Dix FCI.[5]  As of our last application for compassionate release dated April 16, 2020, the virus was spreading.  Now, the risk is greater for AMBROSIO'S health because he contracted it, and unfortunately the BOP has not been able to contain the spread of COVID-19.  Deeply concerning is that AMBROSIO is still at risk of contracting the virus again, and give his age and health, he is at significant risk of long term effects and possibly worse.

30.     Our request is to have Mr. Ambrosio released to strict home detention as a condition of supervised release.  In this way, AMBROSIO continues to face home confinement as a measure of due punishment, but without the serious risk to his physical health.  The recently amended compassionate release statute at § 3582 (c)(1)(A), authorizes the Court to extend supervised release in this way.  *See* 18 U.S.C. § 3582 (c)(1)(A)(the court "may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment").  Such a prolonged period of home confinement will meet Section 3553 (a)'s purpose to give due respect of the law and to acknowledge the seriousness of the offense.

31.     Congress's expansion of the compassionate release statute by § 603 (b) of the First Step Act reflects congressional intent for courts to have greater flexibility to reduce sentences when compelling circumstances justify a later review.  The title of the amendment, "Increasing the Use and Transparency of Compassionate Release," accentuates that intent.  The evolving case law also demonstrates that courts have construed their discretion generously to effectuate Congressional desire to increase the use of the compassionate release statute encouraged by this amendment.  Significantly, courts weighing § 3353 (a) factors have granted release to a defendant with convictions for serious crimes and histories of violence, finding that

---

[5] https://www.bop.gov/coronavirus/

changed health circumstances, aging defendants, post-offense rehabilitation, and carefully

crafted conditions of supervised release ameliorate public safety concerns.

32.     Given his age and present medical circumstances with pneumonia, the conditions

at the jail, and the risk of re-infection of COVID-19, we are asking the Court to release him.  He

has done a substantial amount of his sentence, and the risk of continued incarceration far

outweigh any rehabilitative or punitive benefit seen by further incarceration.

WHEREFORE, it is respectfully requested that the Court grant the defendant's release

relief sought herein and for such other and further re1ief as is just and proper.


Dated:  Huntington, New York
        April 13, 2021


                              _____/s/_____
                              Michael J. Alber, Esq.